[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14544

_____

In Re: Deepwater Horizon Belo Cases

_____

PEGGY A. GRIFFIN, et al,

Plaintiffs-Appellants,

*versus*

BP EXPLORATION & PRODUCTION INC,
BP AMERICA PRODUCTION COMPANY,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cv-00963-MCR-GRJ

———————————

Before ROSENBAUM and TJOFLAT, Circuit Judges, and STEELE, District Judge.[*]

PER CURIAM:

Appellants Peggy A. Griffin, Calvin Nettles, Chason K. Norris, Jackie Robertson, Linda M. Singleton, Gregory L. Warren, James A. Cooper, Bryant Hand, Jr., Dorothy Lynn Hill, Derrick Lee, Michael J. Turner, and Dewayne Veasey appeal the district court's November 4, 2020, order excluding Appellants' proffered toxicology expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and granting summary judgment in favor of Appellees BP Exploration & Production Inc. and BP America Production Company ("BP"). After careful review of the record and the parties' briefs, and with the benefit of oral argument, we affirm.

I.

---

[*] The Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

This matter arises out of a disastrous BP oil spill. On April 20, 2010, the oil-drilling rig *Deepwater Horizon*, operated by BP in the Gulf of Mexico, exploded and sank, resulting in the largest oil spill in the history of marine oil-drilling operations. A massive effort responded to the spill, with as many as 90,000 workers engaged in near-shore and offshore response activities. But the damage was done. Millions of barrels of oil flowed from the damaged Macondo Prospect well over an 87-day period, before the well was finally capped on July 15, 2010.

The oil spill spawned thousands of claims. The Judicial Panel on Multidistrict Litigation assigned Judge Carl Joseph Barbier of the Eastern District of Louisiana to oversee the *Deepwater Horizon* MDL. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010).

Under Judge Barbier's supervision, BP and class counsel entered into a massive class settlement agreement for personal-injury claims. That agreement pertains to class members who allege that exposure to substances released in the spill or used in connection with response activities caused them to suffer physical injuries first diagnosed after April 16, 2012. Under it, these class members can sue BP in federal court in what is called the "Back-End Litigation Option" ("BELO"). The settlement requires BELO plaintiffs to prove that their injuries were legally caused by exposure to purportedly toxicological substances. Hundreds of those BELO cases

are currently pending before Judge M. Casey Rodgers of the Northern District of Florida.

To manage those cases, Judge Rodgers selected Appellants—a dozen BELO plaintiffs who were assigned to clean up the spill on the beaches of Northwest Florida—for a bellwether process. She ordered the parties to first address general causation before reaching the question of specific causation.

Appellants proffered a single expert, Dr. Patricia Williams, to establish general causation. Following discovery, BP moved for summary judgment on the basis that Dr. Williams's opinions failed to satisfy the standards of Rule 702 and *Daubert*. After briefing and a hearing, the district court concluded that Dr. Williams's opinions fell short of the Rule 702 and *Daubert* requirements and granted summary judgment to BP. Appellants now appeal that ruling.

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 1291 as the appeal of a final decision of a district court—here, the order granting summary judgment to BP.

## III.

### A.

We begin with Appellants' contention that the district court erred in failing to conduct an evidentiary hearing on their summary-judgment motion because they wished to elicit live

testimony from Dr. Williams.  We review the district court's denial of an evidentiary hearing for abuse of discretion.  *Loyd v. Alabama Dep't of Corr.*, 176 F.3d 1336, 1339 (11th Cir. 1999).

Here, Dr. Williams previously gave testimony at two depositions over several hours, submitted an expert report, and produced a supplemental report.  Because Dr. Williams had sufficient opportunity to discuss her methodology on these four occasions, the district court did not abuse its discretion when it concluded that it was not necessary to give her yet another opportunity for additional explanation.

## B.

We review the district court's determination to exclude the Appellants' proffered expert testimony for abuse of discretion.  *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014).  Because "[a] district court is more familiar with the procedural and factual details and is in a better position to decide *Daubert* issues," a district judge is afforded "considerable leeway" in determining whether to exclude expert testimony.  *Id.* at 1305 & n.8.  We are thus "require[d] … to defer to the judge's decision on expert testimony, unless it is manifestly erroneous."  *Id.* at 1305; *see also id.* at 1305 n.8 (we "must affirm" unless the district court "made a clear error of judgment").  This "deferential abuse-of-discretion standard is applied stringently, even if a decision on expert testimony is outcome determinative."  *Id.* at 1305.

In a toxic-tort case like this one, a plaintiff must establish both general and specific causation through admissible, reliable expert testimony. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). Rule 702 provides that expert testimony regarding scientific, technical, or specialized knowledge is admissible if it is (1) helpful to the jury, (2) based on sufficient facts or data, (3) the product of reliable principles and methods, and (4) demonstrates that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

We have distilled the Rule 702 requirements into three inquiries: (1) whether the expert is qualified; (2) whether "the methodology by which the expert reaches [a] conclusion is sufficiently reliable" under the principles of *Daubert*; and (3) whether the testimony will assist the trier of fact to understand the evidence or determine a fact in issue through the application of scientific, technical, or other specialized knowledge. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

In its order, the district court found that Dr. Williams's opinions fell "woefully short" of these requirements. Some examples of these shortcomings, the district court determined, include the following:

> • "[T]he exposure scenarios in the studies Dr. Williams cited occurred close to shore and involved fresh crude oil, whereas the Deepwater Horizon spill occurred approximately 125 miles offshore of Florida,

and exposed cleanup workers on Florida beaches to weathered oil."

• "[T]here is . . . no evidence that . . . the conditions present in these cases were somehow comparable to the conditions present in the[] studies [cited by Dr. Williams]."

• "[A]lthough Dr. Williams specifically identified PM [particulate matter] and arsenic as the causative agents in Plaintiffs' cases, neither is referenced in Dr. Williams's oil spill studies."

• "[T]he other oil spill studies documented 'symptoms' . . . and 'primarily acute health effects experienced over a period of less than a year after exposure,' not chronic conditions, as are alleged here."

• "Dr. Williams's complete[ly] fail[ed] to engage in any critical analysis of the studies she cited is a fatal flaw in her methodology."

• "Dr. Williams's arsenic opinion . . . reli[es] on several studies showing an association between arsenic in drinking water and skin lesions, neither of which is at issue here."

• "A general causation opinion that PM or arsenic can be harmful at some level that the Plaintiffs were not potentially exposed to, or the fact that PM or arsenic exceeded human health benchmarks in an area where

> the Plaintiffs did not work, is simply not helpful to the trier of fact, and to the extent Plaintiffs needed another expert to bridge this gap, it was their burden to produce one."

Noting that she did not reach her determination "lightly," the district judge concluded that Dr. Williams's opinions must be excluded as both unreliable and unhelpful. Absent a qualified expert to testify regarding general causation, the district court had to conclude Appellants could not survive summary judgment.

After careful consideration, we conclude that Appellants have shown no reversible error in the district court's findings or rulings. Indeed, the district court's analysis is well-reasoned.

Appellants argue that the district court did not adequately consider the distinction between general and specific causation with respect to Dr. Williams's opinions. We disagree. But even if that were the case, any error that might have occurred was harmless because the court also found that her expert testimony was unhelpful. And we can't say that was an abuse of discretion on this record.

In short, the district court did not abuse its discretion or make any "clear error of judgment" in excluding Dr. Williams' opinions under Rule 702 and *Daubert*.

## C.

We review a grant of summary judgment *de novo. See, e.g., Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 943 (11th

Cir. 2017). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, the district court granted summary judgment because after it excluded Appellants' proffered expert testimony under *Daubert*, Appellants were unable to establish general causation, a necessary element of their claims. Because Appellants did not establish a material issue of fact concerning general causation, we must likewise conclude that the district court did not err in granting summary judgment in favor of BP.

## IV.

For these reasons, we affirm the district court's order.

**AFFIRMED.**