[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16210
_____

D.C. Docket No. 9:14-cv-80781-RLR

EDWARD LEWIS TOBINICK, MD,
a medical corporation
d.b.a. The Institute of Neurological Recovery,
INR PLLC,
a Florida professional limited liability company
d.b.a. The Institute of Neurological Recovery,
M.D. EDWARD TOBINICK,
an individual,

Plaintiffs - Appellants,

THE INSTITUTE OF NEUROLOGICAL RECOVERY,

Plaintiff,

versus

M.D. STEVEN NOVELLA,
an individual,

Defendant - Appellee,

YALE UNIVERSITY, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 8, 2018)

Before MARTIN, JORDAN, and GINSBURG,[*] Circuit Judges.

MARTIN, Circuit Judge:

Dr. Edward Tobinick appeals the District Court's award of attorney's fees to Dr. Steven Novella. Dr. Tobinick argues both that the District Court's decision to award attorney's fees and the amount of fees it awarded were made in error. This case presents an issue of first impression for our circuit. That is, whether the "exceptional case" standard for awarding attorney's fees in Patent Act cases, as articulated by the Supreme Court's recent decision in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. ___, 134 S. Ct. 1749 (2014), also applies to Lanham Act cases. After careful review, and with the benefit of oral argument, we conclude that it does. We also conclude the District Court did not abuse its discretion in choosing to award attorney's fees, or in the fee amount it calculated. We affirm.

## I. BACKGROUND

_____

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

This is not the first time our Court has considered the dispute between Dr. Tobinick and Dr. Novella. Last year, this Court affirmed the District Court's decision in their dispute on the merits. Tobinick v. Novella, 848 F.3d 935, 939 (11th Cir. 2017). Now, we are asked to review the District Court's decision to award attorney's fees to Dr. Novella. We present only a brief overview of the facts and procedural history.

Dr. Tobinick is an internist and dermatologist who patented a treatment that includes injecting the drug etanercept near the spine. Id. at 940. Dr. Tobinick claimed this treatment works for spinal pain, neurological dysfunction, and Alzheimer's disease. Id. In 2013, Dr. Novella, a neurologist at Yale New Haven Hospital, wrote a blog post criticizing Dr. Tobinick's treatment as unsupported by medical evidence. Id. The following year, Dr. Tobinick and his affiliated clinics responded by suing Dr. Novella, Yale University, the Society for Science-Based Medicine ("Society"), and SGU Productions, LLC for (1) false advertising under the Lanham Act, and (2) unfair competition, trade libel, libel per se, and tortious interference with business relationships, all under state law.

The ensuing pre-trial litigation disposed of many claims and defendants, much of it before Dr. Novella filed an answer to the Tobinick complaint. Id. at 941–42. Then, the District Court granted summary judgment for the Society, ruling, among other things, that Dr. Novella's blog posts did not qualify as

3

commercial speech as required under the Lanham Act. On May 15, 2015, the Society moved for fees and costs under the Lanham Act. The Society argued that the dispute qualified as an exceptional case warranting fees under Burger King v. Pilgrim's Pride Corp., 15 F.3d 166 (11th Cir. 1994), because Dr. Tobinick's Lanham Act claim was without merit and he had pursued it in bad faith. In Burger King, this Court said that an exceptional case under the Lanham Act was one "where the infringing party acts in a malicious, fraudulent, deliberate or willful manner." Id. at 168 (quotations omitted). Ultimately, the District Court denied the Society's motion for fees, determining that Dr. Tobinick had not pursued his Lanham Act claim maliciously or fraudulently so as to make it an exceptional case worthy of fees under Burger King.

As for Dr. Tobinick's state law claims against him, Dr. Novella filed a special motion to strike under the California anti-SLAPP statute.[1] The motion sought dismissal of the California state law claims brought by Dr. Tobinick's California clinic as well as an award of costs and fees. The District Court granted Dr. Novella's motion to strike. In doing so, the court noted that "[a]s a prevailing defendant, Novella is entitled to recover his attorney's fees and costs under the anti-SLAPP statute" and directed Dr. Novella to file a separate motion for fees and

---

[1] "California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013) (quotations omitted).

costs. By this point, the District Court had already granted summary judgment for the Society on the Lanham Act claim.

Dr. Novella then answered Dr. Tobinick's complaint and moved for summary judgment on the remaining Lanham Act claim. Dr. Tobinick moved to vacate the District Court's anti-SLAPP order, arguing that Dr. Novella had won that claim by fraud. Dr. Tobinick also moved for sanctions, saying Dr. Novella lied in his deposition. The District Court denied both of Dr. Tobinick's motions. The court also granted summary judgment for Dr. Novella because Dr. Novella's blog posts did not constitute commercial speech.

Next, Dr. Novella filed a motion seeking attorney's fees and costs. To begin, he asked for fees under the California anti-SLAPP statute. Dr. Novella said he had been charged $52,694.55 in fees and costs for preparation of the anti-SLAPP motion and reply. Indeed, he said he could rightfully have been charged $73,993.55 "but was provided a partial contingency fee discount out of respect for the fundamental First Amendment issues at hand." He also set out that he "accrued $9,147.50 in fees for defending the anti-SLAPP motion against a baseless motion for reconsideration," which would have been $10,995.00 but for the fee discount. He also sought $31,980.50 for fees associated with bringing the omnibus motion for fees. Finally, in this regard, Dr. Novella asked that a fee multiplier be applied "in recognition of the novelty and complexity of the issues, the level of expertise of

counsel, the contingency nature of a portion of the fees, and in recognition of the state public policy of discouraging meritless lawsuits." In total (with the multiplier), Dr. Novella requested $169,435.00 in costs and fees relating to the anti-SLAPP motion, although he provided the court with some alternative award amounts that were smaller.

Second, Dr. Novella asked for fees under the Lanham Act. He argued that Dr. Tobinick's lawsuit qualified as an exceptional case under the standard set out in Burger King and Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332 (11th Cir. 2001). Although that court had already decided that a different defendant, the Society, was not eligible for fees under the Lanham Act, Dr. Novella argued that the case had become exceptional because Dr. Tobinick excessively multiplied the proceedings even after he lost his motion for summary judgment to the Society. Dr. Novella noted, "[i]n the six and a half months following the summary judgment to the Society . . . there were 131 new docket entries, the bulk of which arose from Plaintiffs' continued meritless prosecution of the Lanham Act claims." Dr. Novella sought $289,802.75 in fees relating to the Lanham Act claims. Although Dr. Novella advocated for the entire amount, he also broke down fees incurred before and after the ruling on the Society's motion for summary judgment: $66,204.00 before, and $223,598.75 after.

Third, Dr. Novella sought sanctions under 28 U.S.C. § 1927 against Dr. Tobinick's attorneys "for unreasonably and vexatiously multiplying the proceedings." He asked that Dr. Tobinick's attorneys be held jointly responsible for all fees and costs incurred after the District Court's summary judgment ruling for the Society.

In total Dr. Novella requested $624,639.99. Dr. Tobinick opposed the motion for fees, arguing it should be denied because Dr. Novella: (1) had violated Local Rule 7.3 by not providing a draft motion within 30 days of the District Court's final judgment; (2) had not supported his motion with credible evidence of the appropriate fee amounts; (3) had not shown bad faith on the part of Dr. Tobinick, so as to warrant fees under the Lanham Act or sanctions under 28 U.S.C. § 1927; and (4) because the awarding of anti-SLAPP statute fees violated the Erie[2] doctrine.

Dr. Tobinick submitted expert testimony supporting his argument that many of the fee entries submitted by Dr. Novella were not compensable because they were based on double-counting or nonrelevant work. The expert suggested that the appropriate fee award for the anti-SLAPP motion was $36,186. The Tobinick expert opined that no fees should be awarded under the Lanham Act because it was not an exceptional case. While the expert noted that similar double-counting

---

[2] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

7

problems were likely present in the request for Lanham Act fees, he did not offer any line-item objections to the Lanham Act fees or propose an alternative award amount.

The District Court exercised its discretion not to deny Dr. Novella's fee request for violating local rules. In an order dated December 23, 2015, the court wrote: "Given the prior orders addressing fee issues . . . as well as the history of this litigation, the Court finds Plaintiffs were not prejudiced by the failure to strictly comply with the rule, to the extent it applies to the fees Defendant requests."

On May 3, 2016, Dr. Novella filed a notice of supplemental authority, citing to Baker v. DeShong, 821 F.3d 620 (5th Cir. 2016). In DeShong, the Fifth Circuit relied on the Supreme Court's decision in Octane Fitness to say that exceptional cases under the Lanham Act should not be limited to cases of bad faith, but should also include cases "where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" Id. at 625 (quoting Octane Fitness, 134 S. Ct. at 1756). "Under this standard," Dr. Novella argued, "the exceptional nature of the case is readily apparent." Dr. Tobinick gave no response to the supplemental authority.

The District Court granted part of the attorney's fees and costs Dr. Novella sought under the anti-SLAPP statute and the Lanham Act, but denied his motion for sanctions under 28 U.S.C. § 1927.  The court noted it had already ruled that Dr. Novella was entitled to fees under the anti-SLAPP statute, such that Dr. Tobinick's argument that anti-SLAPP fees should not be awarded at all was an attempt to relitigate an already decided matter.  On the specific anti-SLAPP fee request, the court agreed with Dr. Tobinick that Dr. Novella had submitted time records with duplicative and unrelated entries.  The court also determined the case was not complex enough to warrant a fee multiplier under California law.  The court therefore reduced the award from Dr. Novella's requested $169,435 to $36,186 for anti-SLAPP-related fees.  This was the exact amount Dr. Tobinick's expert had suggested.

On the Lanham Act fee request, the court decided that this was an exceptional case warranting a fee award.  In reaching this decision, the court relied on the new exceptional case standard set out in Octane Fitness.  The court stated: "Although the Eleventh Circuit has not yet considered the effect of Octane Fitness on its Lanham Act 'exceptional case' jurisprudence, district courts in this circuit and other circuit courts have consistently held that a showing of subjective bad faith or fraud is no longer required."  The court noted that it had twice before ruled against the plaintiffs on the issue of commercial speech, although in different

9

procedural postures. The court observed that even after these rulings, "Plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims," moving for sanctions, and accusing Dr. Novella of perjury. The court concluded: "Based on the totality of the record, particularly the Court's repeated rulings that the speech at issue was not commercial speech and Plaintiffs' belated attempts to inject new issues into the proceedings by making unsupported allegations of perjury, the Court finds this case to be an 'exceptional' one meriting an award of fees under the Lanham Act." The award was for the full amount requested by Dr. Novella, but only as to those expenses incurred after the order granting summary judgment for the Society. The amount was $223,598.75. The court noted that Dr. Tobinick did not make any specific objections to the Lanham Act fees calculation.

The court declined to award sanctions under 28 U.S.C. § 1927, writing that "despite the Court's conclusion that Plaintiffs' conduct justifies an award of fees against them, the Court is unwilling to find that Plaintiffs' counsel's conduct is tantamount to bad faith."

On September 20, 2016, a final judgment of fees was issued, awarding a total of $259,784.75 ($36,186.00 for fees relating to the anti-SLAPP statute and $223,598.75 for fees relating to the Lanham Act). This appeal, seeking review of the fee award, followed.

## II. STANDARD OF REVIEW

We review de novo questions of law.  Loggerhead Turtle v. Cty. Council of Volusia Cty., 307 F.3d 1318, 1322 (11th Cir. 2002).  We review a district court's decision to award fees and the amount of fees to award for abuse of discretion.  See Tire Kingdom, 253 F.3d at 1335.  "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous."  United States v. Toll, 804 F.3d 1344, 1353 (11th Cir. 2015) (quotation omitted).

### III. ATTORNEY'S FEES UNDER THE LANHAM ACT

A. LEGAL STANDARD

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling."  POM Wonderful LLC v. Coca-Cola Co., 573 U.S. ___, 134 S. Ct. 2228, 2234 (2014).  As a threshold matter, a plaintiff claiming false advertising must show the defendant engaged "in commercial advertising or promotion."  15 U.S.C. § 1125(a)(1)(B).  The Lanham Act also provides for an award of attorney's fees for prevailing parties under certain circumstances.  Specifically, the Act states: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Id. § 1117(a).

The Eleventh Circuit has traditionally interpreted the Lanham Act's exceptional case standard to allow for the award of fees "only in exceptional

11

circumstances and on evidence of fraud or bad faith." Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982). This Court later stated that "[w]hile Congress has not further defined 'exceptional,' the legislative history of the [Lanham] Act suggests that exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." Burger King, 15 F.3d at 168 (quotations omitted). Even if a court determines a case qualifies as exceptional, the ultimate decision whether or not to award attorney's fees "remains within the discretion of the trial court." Id.

The Patent Act's attorney's fee provision is identical to that in the Lanham Act. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). The Federal Circuit had read this provision to only apply in cases "when there has been some material inappropriate conduct," or when the litigation is both "brought in subjective bad faith" and "objectively baseless." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). The Federal Circuit had also required that "the characterization of the case as exceptional must be established by clear and convincing evidence. Id. at 1382.

In Octane Fitness, the Supreme Court ruled that the Federal Circuit's interpretation of the Patent Act's attorney's fees provision was inconsistent with the statutory text. 134 S. Ct. at 1752–53. The Supreme Court said the Federal

12

Circuit's standard was "unduly rigid, and it impermissibly encumber[ed] the statutory grant of discretion to district courts." Id. at 1755. The Court based this decision entirely on the text of the Patent Act: "Our analysis begins and ends with the text of § 285. . . . The text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." Id. at 1755–56. And the Court read "exceptional case" to mean "simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 1756. Whether a particular case stands out from the others was to be left to the discretion of district courts, considering the totality of the circumstances. Id.

The Supreme Court also rejected the Federal Circuit's "clear and convincing" standard. Id. at 1758. The Court said nothing in the statute required a heightened burden of proof, that it hadn't interpreted comparable fee-shifting provisions to require as much, and that "patent-infringement litigation has always been governed by a preponderance of the evidence standard." Id.

In this case, we are asked to consider whether the exceptional case standard from the Patent Act, as defined in Octane Fitness, also applies to cases brought under the Lanham Act. Every circuit to have considered the issue has said that it

13

does.  See Romag Fasteners, Inc. v. Fossil, Inc., 866 F.3d 1330, 1334 (Fed. Cir. 2017); SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam); Baker v. DeShong, 821 F.3d 620, 622 (5th Cir. 2016); Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 313, 317–18 (6th Cir. 2015); Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015); Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314–15 (3d Cir. 2014).

We think this result correct.  The language in the two provisions is identical. Compare 15 U.S.C. § 1117(a), with 35 U.S.C. § 285.  Beyond that, courts generally "have looked to the interpretation of the patent statute for guidance in interpreting" the attorney's fees provision in the Lanham Act.  Fair Wind Sailing, 764 F.3d at 315 (quotation omitted and alteration adopted).  And Octane Fitness did gesture toward the Lanham Act, although fleetingly.  In its discussion of the common meaning of "exceptional," the Court referenced a D.C. Circuit opinion written by then-Judge Ruth Bader Ginsburg and joined by then-Judge Scalia that "interpret[ed] the term 'exceptional' in the Lanham Act's identical fee-shifting provision, 15 U.S.C. § 1117(a) to mean 'uncommon' or 'not run-of-the-mill.'" Octane, 134 S. Ct. at 1756 (citing Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest., 771 F.2d 521, 526 (D.C. Cir. 1985)).

14

"We are bound to follow a prior precedent or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision." Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998).  In light of the broad language of Octane Fitness and the unanimous voice of other circuits to have considered this question, we recognize our past precedent as having been abrogated.  We conclude that to be an "exceptional case" under the Lanham Act requires only that a case "stands out from others," either based on the strength of the litigating positions or the manner in which the case was litigated.  Octane Fitness, 135 S. Ct. at 1756.

Dr. Tobinick seems to argue that even if the Octane Fitness standard is the right one for the future, it was not correct to apply it in his case.  He says it is not fair for the District Court to apply the Octane Fitness standard to Dr. Novella's motion for fees when the stricter, pre-Octane Fitness standard applied to the Society's motion for fees.  Dr. Tobinick offers no legal authority for this argument.  Our review of the pleadings indicates that the Society did not ask the District Court to apply the Octane Fitness standard in considering its motion for fees, while Dr. Novella did.  He filed a notice of supplemental authority describing the developing legal standard on this issue.  Dr. Tobinick gave no response.  The District Court did not err in applying the Octane Fitness standard.

B.  APPLICATION OF THE OCTANE FITNESS STANDARD

15

Having decided the District Court used the correct standard, we now review its application of that standard.  Under Octane Fitness, the District Court determined that the case was exceptional because it had ruled against Dr. Tobinick in three separate orders, and "[p]laintiffs repeatedly failed to produce new arguments or evidence to distinguish the Court's prior rulings."  The court also noted "after the Court had twice ruled against Plaintiffs on the commercial speech issue, and more than eleven months after the litigation began, Plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims."  The court acknowledged it had previously denied the Society's motion for fees, but said the case was now in a "very different procedural posture."  It concluded that "[b]ased on the totality of the record, particularly the Court's repeated ruling that the speech at issue was not commercial speech and Plaintiffs' belated attempts to inject new issues into the proceedings by making unsupported allegations of perjury, the Court finds this case to be an 'exceptional' one meriting an award of fees under the Lanham Act."

This was not an abuse of discretion.  The District Court identified a number of elements of this case that made it "not run-of-the-mill."  See Octane, 134 S. Ct. at 1756 (quotation omitted).  Especially compelling is the District Court's finding that Dr. Tobinick responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly seeking to add parties and claims and bringing what

16

the court viewed as baseless motions for sanctions and accusations of perjury.  As

Dr. Novella points out:

> The [Society] summary judgment order was docket entry 157, and the
> order on the Fee Motion was docket entry 333.  The case started on
> June 9, 2014.  After nine months, and after every defendant other than
> Dr. Novella was dismissed, the case more than doubled in size by the
> time of the Fee Motion order.

On these facts, the District Court did not abuse its discretion in finding this

was an exceptional case.

In making this decision, we do not place much weight on the fact that

Dr. Tobinick continued litigating his case even in the face of a number of

adverse rulings on whether Dr. Novella's blog posts qualified as

"commercial speech."  At the time, the question of what constituted

commercial speech was an open question in this circuit.  This Court resolved

the question by way of a published decision after oral argument on the

merits of this dispute.  See Tobinick, 848 F.3d at 952.  A case will not

qualify as exceptional under the Lanham Act merely because one side has

zealously pursued or defended its claim, especially on an issue with no

directly controlling precedent.  Even so, we conclude that the District Court

was well within its discretion to find Dr. Tobinick's manner of litigating his

suit made it an exceptional case supporting an attorney's fees award under

the Lanham Act.

17

## IV. ATTORNEY'S FEES UNDER THE ANTI-SLAPP STATUTE

Dr. Tobinick also argues that the District Court erred in awarding fees under the California anti-SLAPP statute.  He argues, briefly, that the anti-SLAPP statute violates the Erie doctrine and various constitutional amendments and rules of civil procedure.  However, we already affirmed the District Court's decision on the merits to grant Dr. Novella's special motion to strike under the California anti-SLAPP statute.  See Tobinick, 848 F.3d at 943–47.  And under that statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. § 425.16(c)(1).  Dr. Tobinick implies the District Court should have refused to award anti-SLAPP fees on equitable grounds.  Even assuming the District Court could have done so, see Pfeiffer Venice Props. v Bernard, 123 Cal. Rptr. 2d 647, 650 (Cal. Ct. App. 2002) (explaining that "the award of attorney fees to a defendant who successfully brings a special motion to strike is not discretionary but mandatory"), it did not abuse its discretion in awarding attorney's fees relating to Dr. Novella's anti-SLAPP statute motion.

## V. THE FEE AWARD CALCULATION

Dr. Tobinick also raises a number of arguments relating to the District Court's calculation of the fee award.  In general, he provides a litany of reasons why the evidence of fees provided by Dr. Novella was so unreliable that the

18

District Court abused its discretion in accepting it. Among other things, Dr. Tobinick argues that the District Court had no discretion to calculate a fee award without seeing Dr. Novella's fee contract and that the information provided by Dr. Novella's attorneys relating to hours and hourly rates was not credible. But there was no requirement that Dr. Novella file his fee contract with the court. And we cannot say that the District Court abused its discretion in weighing the credibility of the evidence put before it. We are mindful that where Dr. Tobinick made line-item objections to the fee request, the District Court accepted those objections. The District Court did not abuse its discretion in reaching the amount that it did.

As a procedural matter, Dr. Tobinick also argues that the District Court erred in not conducting a hearing on the fee award and in accepting Dr. Novella's motion for fees even though it violated local rules. But again here there is no error. While Dr. Novella did request a status conference on fees-related issues, Dr. Tobinick never requested the hearing on fees he now says the District Court was required to provide. The District Court did not abuse its discretion in instead relying on the extensive written record before it. See Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). And Dr. Tobinick has not shown that the District Court abused its discretion in allowing Dr. Novella to file an omnibus motion for fees without adhering to some of the procedural requirements under local rules. We "give[] great deference to a district court's interpretations of its

19

local rules." <u>Clark v. Hous. Auth. of Alma</u>, 971 F.2d 723, 727 (11th Cir. 1992).

Here, the District Court determined, to the extent the local rules even applied to Dr.

Novella's omnibus motion for fees, any failure to adhere to them did not prejudice

Dr. Tobinick.  This was not error.

## VI. CONCLUSION

We affirm the District Court's fee award to Dr. Novella in its entirety.

**AFFIRMED.**