[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-15581 & 18-10513
Non-Argument Calendar

————————————————

D.C. Docket No. 1:16-cv-24421-FAM

ROBERT EDWARD PETERSEN,
ANN WILMA PETERSEN, his wife,

Plaintiffs-Appellants,

versus

NCL (BAHAMAS) LTD. d.b.a.
Norwegian Cruise Line,

Defendant-Appellee.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(September 5, 2018)

Before MARTIN, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Robert Petersen slipped and fell on the deck of a Norwegian Cruise Line ("NCL") cruise ship. He sued NCL, claiming that NCL was negligent in several ways. Petersen's wife, Plaintiff-Appellant Anne Wilma Petersen, brought a loss of consortium claim. The district court granted summary judgment in favor of NCL and the Petersens appealed. For the reasons discussed below, we conclude that the district court prematurely granted summary judgment regarding Mr. Petersen's negligence claims but properly granted summary judgment in favor of NCL on Mrs. Petersen's loss of consortium claim. Accordingly, we affirm with respect to the judgment of the district court regarding Mrs. Petersen's loss of consortium claim, but we reverse the grant of summary judgment as to Mr. Petersen's negligence claims and remand to the district court for further proceedings on those claims.[1]

## I.    STANDARD

The Court reviews a district court's order granting summary judgment de novo, viewing the record, and all its inferences, in the light most favorable to the nonmoving party. Zaben v. Air Prod. & Chemicals, Inc., 129 F.3d 1453, 1455 (11th Cir. 1997) (per curiam). Summary judgment is appropriate "if the movant

---

[1] The district court also entered an order taxing costs in favor of NCL. The Petersens separately appealed from that order, and we consolidated that appeal with this one. Because we reverse the district court's grant of summary judgment regarding Mr. Petersen's negligence claims, we also vacate the award of costs.

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, a district court may grant summary judgment to a nonmovant or on grounds not raised by the parties only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f).

## II.    BACKGROUND

### A. Mr. Petersen's Fall and Injuries

In October 2015, the Petersens took a cruise on NCL's cruise ship, the Breakaway. On October 22, 2015, the Breakaway docked in Bermuda. Rather than go ashore, the Petersens stayed on the Breakaway and planned to soak in the hot tub on deck 16. When the Petersens arrived at deck 16, Mrs. Petersen went to the hot tub and Mr. Petersen went to the bar to get her a drink. According to Mr. Petersen's deposition, he recalls feeling strong wind as he stepped onto the deck. He testified that he remembers the wind blowing water from decorative waterfalls onto him and the deck. Mr. Petersen testified that he does not recall it raining but does remember seeing water on the deck. As Mr. Petersen walked from the bar to the hot tub, both of his feet slipped out from under him. He landed on his back and hit his head on the deck. The ship's closed-circuit television system ("CCTV") captured video footage of Mr. Petersen's fall from several angles.

3

Mr. Petersen was knocked unconscious by the fall and taken to a hospital in Bermuda. After an examination, Mr. Petersen returned to the Breakaway and remained on board for the rest of the cruise. He sought additional medical treatment when he returned home. According to Mr. Petersen's treating physician, the fall caused small areas of bleeding in Mr. Petersen's brain. Mr. Petersen still suffers from headaches, impaired vision, equilibrium problems, speech problems, and memory problems due to the fall.

### B. Deck Material and Maintenance

The deck material on which Mr. Petersen fell is called Bolidt Bolideck Select Soft ("Bolidt Select Soft"). The Petersens offer evidence of sixty other NCL passengers who slipped and fell on liquid on the Bolidt Select Soft decks on the Breakaway during the three years before Mr. Petersen's fall. The Petersens also offer evidence suggesting that NCL used too strong of a detergent to clean the Bolidt Select Soft deck material. Specifically, NCL's "Deck Night Washing Policy" suggests that NCL used a detergent called "Bolidt Super Stripper" to clean all of its decks, including the Bolidt Select Soft. But the deck manufacturer's instructions recommend that cruise lines clean the Bolidt Select Soft deck material with a "[m]ild soap cleaner for daily use" called "Royal Soft." The instructions recommend the use of a "[s]trong . . . cleaning/degreasing agent," the "Bolidt Super Stripper," on a different kind of Bolidt deck but do not recommend its use

4

on the Bolidt Select Soft. The instructions also warn: "Bolidt Super Stripper is to be used only in the maximum concentrations specified. All traces of Super Stripper should be removed after cleaning by washing with potable water. Prolonged exposure to Super Stripper may permanently damage the deck surface."

### C. District Court Proceedings

The Petersons sued NCL for negligence and loss of consortium. In their complaint, the Petersens claim that NCL was negligent in several ways. Specifically, they allege, "[NCL] owed a duty to the passengers, and in particular to the Plaintiffs, to exercise reasonable care to design, maintain and operate its vessel Norwegian Breakaway in a reasonably safe condition." They claim that NCL was negligent in fulfilling this duty by "[f]ailing to warn passengers of the dangerous conditions of the walking surface of the deck or floor," as well as by "[f]ailing to promulgate and/or follow proper procedures for monitoring the slipperiness and keeping the walking surface of the deck or floor reasonably safe for passengers."

NCL filed a motion for summary judgment, arguing that (1) NCL had no duty to warn Mr. Petersen of the dangerous condition because the dangerous condition was open and obvious; (2) NCL had no duty to warn Mr. Petersen of the dangerous condition because it had no notice of the dangerous condition; and (3) maritime law does not recognize a cause of action for loss of consortium. NCL

5

did not address any claim that it negligently maintained the deck in the motion for summary judgment. In their response in opposition to the motion for summary judgment, the Petersens again referred to NCL's allegedly negligent maintenance of the deck, stating, "Defendant's operations created the unreasonably dangerous condition, by negligent maintenance . . . ." Moreover, at the hearing before the magistrate judge regarding the motion for summary judgment, the Petersens' counsel argued extensively regarding Mr. Petersen's claim that NCL negligently maintained the deck.

The magistrate judge recommended that summary judgment was appropriate on all of the Petersens' claims. Regarding Mr. Petersen's negligence claims, the magistrate judge concluded that NCL had no duty to warn Mr. Petersen of the slipperiness of the deck because the dangerous condition—the wet deck—was open and obvious. The magistrate judge did not address negligent maintenance at all in the report and recommendation. The Petersens objected to the report and recommendation, arguing again in part that NCL negligently maintained the deck. The district court adopted the magistrate judge's report and recommendation. Like the magistrate judge, the district court did not address negligent maintenance.

On appeal, the Petersens argue that: (1) the district court erred by granting summary judgment in favor of NCL on Mr. Petersen's failure to warn claim based on the open and obvious doctrine because the unreasonably slippery nature of the

6

deck was not open and obvious; (2) the district court erred by granting summary judgment in favor of NCL on Mr. Petersen's negligent maintenance claim because NCL did not seek summary judgment regarding that claim; and (3) the district court erred by denying Mrs. Petersen's loss of consortium claim.

### III.    DISCUSSION

The parties agree that, because Mr. Petersen's injuries occurred on navigable waters, federal maritime law controls this case. Everett v. Carnival Cruise Lines, 912 F.2d 1355, 1358 (11th Cir. 1990); see also Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 901–02 (11th Cir. 2004) (holding that federal maritime law governed a cruise passenger's sexual assault case against a cruise ship even though the assault took place while the ship was docked in Bermuda). In analyzing a maritime tort case, the Court applies the general principles of negligence law. Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (per curiam). Under those principles, a plaintiff must show that (1) the defendant had a duty, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm. Id. A cruise line owes its passengers a duty of "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). The cruise

line's duty to its passengers includes "a duty to warn of known dangers . . . in places where passengers are invited or reasonably expected to visit" that would not be open and obvious to a reasonable person under the circumstances. Chaparro, 693 F.3d at 1336; Deperrodil v. Bozovic Marine, Inc., 842 F.3d 352, 357 (5th Cir. 2016) ("A vessel owner does not need to warn passengers or make special arrangements for open-and-obvious risks.").

### A. Negligent Failure to Warn

The Petersens first argue that the district court should not have applied the open and obvious doctrine to Mr. Petersen's negligent failure to warn claim. Specifically, they claim that, although it was obvious that the deck on which Mr. Petersen fell was wet, it was not open and obvious that the deck was unreasonably slippery. The Petersens offer the following evidence to support their claim that the deck on which Mr. Petersen fell was unreasonably slippery: (1) the video footage showing that both of Mr. Petersen's feet slipped completely out from under him in such a manner that a jury might find that the deck surface was unreasonably slippery; (2) the fact that sixty other NCL passengers fell on Bolidt Select Soft decking on the Breakaway during the three year period before Mr. Petersen fell; and (3) the evidence suggesting that NCL used the Bolidt Super Stripper detergent on the Select Soft deck, even though that was not recommended by the manufacturer.

8

We agree with the Petersens that this evidence is sufficient for a reasonable juror to conclude that the deck on which Mr. Petersen fell was unreasonably slippery. Furthermore, we agree that, although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person.[2] Because there is evidence in the record from which a reasonable juror could conclude that the deck was unreasonably slippery, we reverse the district court's grant of summary judgment on the failure to warn claim based on its conclusion that the water on the deck was an open and obvious risk.

We recognize that in the district court NCL raised additional alternative arguments in its defense against Mr. Petersen's negligent failure to warn claim—i.e., NCL's alleged lack of notice of the risk-creating condition and its argument that the warnings actually given were adequate. However, Mr. Petersen's failure to warn claim was rejected by the magistrate judge and the district court solely on the open and obvious ground, and neither addressed NCL's alternative grounds. Having vacated the district court's judgment with respect to the open and obvious

---

[2] We have reached this same conclusion in another unpublished case. See Frasca v. NCL (Bahamas), Ltd., 654 F. App'x 949, 953 (11th Cir. 2016) (per curiam) (reversing the district court's grant of summary judgment in a case in which the plaintiffs presented evidence that the deck was unreasonably slippery because, although it may be obvious that water on a deck will make it slicker than usual, the deck's visible wetness may not alert a reasonable person to the extent of the deck's slipperiness).

9

ground, we remand Mr. Petersen's failure to warn claim to the district court to consider in the first instance NCL's alternative arguments.

### B. Negligent Maintenance

The Petersens next argue that the district court erred by granting summary judgment with regards to their negligent maintenance claim. Specifically, they claim that NCL did not move for summary judgment regarding this claim and that the district court did not give them sufficient notice of its intent to grant summary judgment on the claim. We agree with the Petersens that the district court did not properly address their negligent maintenance claim.

The Petersens' complaint lists a single negligence count against NCL. But the substance of the complaint makes clear that the Petersens claim that NCL was negligent in several ways, including by negligently maintaining the deck material. Moreover, counsel for the Petersens eliminated any uncertainty by arguing extensively regarding Mr. Petersen's negligent maintenance claim at the summary judgment hearing. Nevertheless, the magistrate judge, who conducted the hearing, did not address the negligent maintenance claim in his report and recommendation. And despite the fact that the Petersens argued that the deck was negligently maintained in their objections to the report and recommendation, the district court also failed to address that claim. Given that NCL did not move for summary judgment regarding Mr. Petersen's negligent maintenance claim, the district court

never addressed that claim, and there is evidence suggesting that NCL did not follow the manufacturer's instructions for cleaning the deck, we remand for the district court to address Mr. Petersen's negligent maintenance claim in the first instance.

### C.  Loss of Consortium

This Court has held that plaintiffs may not recover loss of consortium damages for personal injury claims under federal maritime law. See In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993, 121 F.3d 1421, 1429 (11th Cir. 1997) (holding that the plaintiffs could not recover punitive or loss of consortium damages for personal injuries sustained when a commercial vessel crashed into a railway bridge); see also Lollie v. Brown Marine Serv., Inc., 995 F.2d 1565, 1565 (11th Cir. 1993) (per curiam) ("[N]either the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases."). "We are bound to follow a prior precedent or en banc holding, except where that holding has been overruled or undermined to the point of abrogation by a subsequent en banc or Supreme Court decision." Tobinick v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998)).

The Petersens recognize that this Circuit's precedent precludes Mrs. Petersen's loss of consortium claim. Nevertheless, they argue that the Court should

reexamine In re Amtrak in light of the Supreme Court's more recent holding in Atlantic Sounding Co. v. Townsend, 557 U.S. 404, 129 S. Ct. 2561, 174 L. Ed. 2d 382 (2009). In Atlantic Sounding, the Supreme Court held that, as a matter of general maritime law, a seaman may recover punitive damages for the willful and wanton disregard of the maintenance and cure obligation in the appropriate case. Id. at 424, 129 S. Ct. at 2575. Nothing in that opinion undermines our holding in In re Amtrak. See In re Amtrak, 121 F.3d at 1429 (suggesting that punitive or loss of consortium damages may be available under federal maritime law "in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman"). That is, there are no exceptional circumstances in this case and no allegations of intentional conduct. Accordingly, we affirm the district court's grant of summary judgment regarding Mrs. Petersen's loss of consortium claim.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.