**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13225

Non-Argument Calendar

_____

COMMODORES ENTERTAINMENT CORPORATION,

*Plaintiff-Counter Defendant*

*Third Party Defendant-Appellee,*

*versus*

THOMAS MCCLARY,

FIFTH AVENUE ENTERTAINMENT, LLC,

*Defendants-Counter Claimants*

*Third Party Plaintiffs-Appellants,*

DAVID FISH,

an individual, et al.,

*Third Party Defendants.*

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:14-cv-01335-RBD-EJK

———————————————

Before ROSENBAUM, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

For a fifth time, Thomas McClary and Fifth Avenue Entertainment, LLC (collectively, "McClary") have lodged an appeal in our Court in the decade-long lawsuit brought against them by Commodores Entertainment Corporation ("CEC"). We've affirmed three appeals in CEC's favor. *Commodores Ent. Corp. v. McClary*, 648 F. App'x 771 (11th Cir. 2016) (*Commodores I*); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018) (*Commodores II*); *Commodores Ent. Corp. v. McClary*, 822 F. App'x 904 (11th Cir. 2020) (*Commodores III*). In the fourth appeal, we vacated and remanded for further proceedings in light of *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023), which the Supreme Court issued while the appeal was pending. *Commodores Ent. Corp. v. McClary*, 2023 WL 5664170 (11th Cir. Sept. 1, 2023) (*Commodores IV*). On remand, the district court "slightly" modified its injunction to comport with *Abitron* and then entered an order reinstating its prior attorneys' fee award. In this appeal, McClary challenges only the decision to award fees. After careful review, we affirm.

I.

We'll repeat, in brief, the relevant background of this protracted litigation once more. It centers on ownership of the mark

"The Commodores," the name of a famous funk and soul band that rose to prominence in the 1970s and 1980s. McClary was an original member of the band who left in 1984 and later performed in a group he called "The 2014 Commodores" or "The Commodores featuring Thomas McClary." In 2014, CEC -- a corporation run by two original Commodores who remained active in the group, William King and Walter Orange -- sued McClary, raising trademark, false advertising, and unfair competition claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and state law. McClary responded with his own counterclaims and third-party claims.

Early on, the district court granted a motion by CEC for a preliminary injunction, barring McClary's use of the mark. Then, when CEC filed a motion for clarification revealing that McClary was marketing a tour in Europe, the court held that the preliminary injunction order applied extraterritorially because use of the mark overseas would have a negative impact on CEC, a U.S. corporation, and would continue to cause customer confusion in this country. Based on the prevailing law at the time, we affirmed the entry of preliminary injunctive relief, including its extraterritorial application. *Commodores I*, 648 F. App'x at 778.

Moving forward, the district court bifurcated the trial into Phase I, addressing the trademark ownership rights, and Phase II, addressing infringement, liability, and damages. Phase I ended with the entry of an order granting CEC's motion for judgment as a matter of law -- before the jury was called upon to answer the

question -- and converting the preliminary injunction into a permanent injunction.  We affirmed.  *Commodores II*, 879 F.3d at 1142.

In Phase II, the district court granted partial summary judgment in favor of CEC on its trademark infringement claim and summary judgment in favor of CEC on all of McClary's counterclaims and third-party claims.  Then, at a 2019 trial, a jury found that McClary had actual notice of CEC's trademark registrations as of June 2009 and that CEC was entitled to damages equal to McClary's profits from seven musical performances in Europe.  The district court also denied a motion by McClary to modify the permanent injunction so that it would no longer include Mexico, New Zealand, and Switzerland because McClary had obtained exclusive licenses for the mark in those countries.  Again, a panel of this Court affirmed.  *Commodores III*, 822 F. App'x at 915.

After all that, CEC moved for attorneys' fees and costs under § 1117(a) of the Lanham Act.  The district court referred the matter to a magistrate judge, who determined in a Report and Recommendation ("R&R") that CEC was entitled to fees and costs because the case was "exceptional" under § 1117(a).  In a second R&R, the magistrate judge calculated attorneys' fees to be $602,618.67 and costs to be $4,560.56.  Over the objections of McClary, the district court adopted both R&Rs in full.  Meanwhile, McClary moved to modify the scope of the permanent injunction to allow him to use the mark throughout the European Union.  Finding, *inter alia*, that the worldwide injunction did not infringe on the sovereignty

of the European Union, the district court upheld the worldwide scope of the injunction.

While McClary's fourth appeal was pending -- this time challenging the attorneys' fees award and the scope of the injunction -- the Supreme Court decided *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023). Because *Abitron* altered the law in some measure surrounding "the foreign reach of 15 U.S.C. § 1114(1)(a) and § 1125(a)(1)," two provisions of the Lanham Act, *id*. at 415, we remanded the case to the district court to review in the first instance the effect of the decision on both the scope of the injunction and the fees, *Commodores IV*, 2023 WL 5664170, at *2-3.

On remand, the district court clarified that post-*Abitron*, "McClary's actual performances abroad under the moniker of the mark are outside the reach of th[e] [c]ourt's jurisdiction to the extent they constitute a 'use in commerce' occurring wholly in a foreign country." However, the court continued, the conduct of McClary's New York-based booking agent -- who used the mark to "'organize, promote, negotiate, finalize, coordinate,' 'plan, market, contract, [and] publicize'" those foreign performances -- in addition to "one infringing performance in the U.S.," all "constitute[d] an infringing 'use in commerce' of the mark domestically, bringing that conduct within the reach of th[e] [c]ourt's territorial jurisdiction." The court then modified the injunction, "only to the extent that it does not apply to purely extraterritorial use of the [CEC marks], such as performances outside the United States." By separate order, the court denied McClary's motion to vacate the jury's

verdict in favor of CEC, finding that it was well-founded on the evidence of domestic infringing conduct still within the court's jurisdiction, even post-*Abitron*.

As for attorneys' fees, the district court issued yet another order, reinstating its attorneys' fee award. It first found "no serious question here that CEC remains the prevailing party post-*Abitron*." The court next confirmed that the case remained "exceptional," even after *Abitron*, noting that McClary's "most egregious positions" -- asserting that his infringing use of the CEC marks was "fair use" and repeatedly arguing that a typographical error in the trademark registration rendered it invalid – had nothing to do with the extra-territorial reach of its permanent injunction. The court concluded that fees were still warranted and reinstated the fee award.

McClary timely appealed the order awarding attorneys' fees.

II.

We review the grant of attorneys' fees under the Lanham Act for abuse of discretion. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484 (11th Cir. 2018); *accord Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018) ("Even if a court determines a case qualifies as exceptional, the ultimate decision whether or not to award attorney's fees 'remains within the discretion of the trial court.'"). We also review for abuse of discretion a determination under the fee provision that a case is "exceptional." *Tobinick*, 884 F.3d at 1119. "'A district court abuses its discretion if it relies on an error of law or a clearly erroneous factual finding.'" *Verisign*, 891 F.3d at 484.

On the extensive record before us, we are unpersuaded by McClary's claim that the district court abused its discretion in determining that CEC was entitled to attorneys' fees. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (analyzing an identical provision in the Patent Act); *see also Tobinick*, 884 F.3d at 1117–18 (applying the *Octane Fitness* standard to the Lanham Act). "A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." *Tobinick*, 884 F.3d at 1119.

Rather, courts must use a "case-by-case exercise of their discretion, considering the totality of the circumstances," "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 572 U.S. at 554 & n.6. So, for instance, we've upheld a trademark infringement case as exceptional where the plaintiff (against whom fees were imposed) "responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly seeking to add parties and claims and bringing what the

court viewed as baseless motions for sanctions and accusations of perjury." *Tobinick*, 884 F.3d at 1119.

Here, the district court began by finding "no serious question here that CEC remains the prevailing party." It explained that CEC owns the marks in the U.S.; the jury awarded CEC damages founded on domestic infringement; and the injunction to stop McClary from using his American agent to book performances remains in place. To the extent McClary claims he successfully registered a Commodores trademark in Europe, this alleged success, if it is still viable, does not address any material issue nor impact the primary issue in this litigation: McClary's claimed ownership of and right to use the CEC marks in the U.S. In any event, a party need not prevail on *all* issues to be the prevailing party. *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1012 (11th Cir. 2001). We agree that CEC was the prevailing party in this litigation -- a finding McClary does not dispute.

The district court then identified a number of elements that took this case out of the "run-of-the-mill" and made it exceptional. *Tobinick*, 884 F.3d at 1119 (quoting *Octane Fitness*, 572 U.S. at 554). It summarized the substantive strength of the parties' positions and the unreasonable manner in which McClary conducted this litigation like this: "Ten years of contested litigation (which continues apace), over 600 docket entries, two trials resolving in CEC's favor, four appeals, and multiple post-remand rulings have made it clear that McClary's position -- that he was entitled to flout th[e] [c]ourt's [o]rders and have his American agent book performances using

CEC's marks -- is untenable." Indeed, McClary lost on every claim he made before two juries in the district court and to date -- despite the Supreme Court's modification to the scope of the Lanham Act in *Abitron* -- the district court's injunction largely remains intact.

The record reflects that the crux of McClary's legal arguments and defenses -- that he had rights to the trademark over CEC -- was weak from the start. As we've detailed, two other founding members of The Commodores repeatedly testified that they assigned their common-law trademark rights to CEC. *Commodores II*, 879 F.3d at 1136 ("[T]he record shows that King's and Orange's rights became CEC's rights by way of assignment."). Notably, "McClary introduced no evidence to the contrary." *Id*. In fact, the district court found his argument that he continued to hold enforceable rights in the CEC marks 30 years after leaving the group "unpersuasive" and "frankly in stark contrast to the law," since the evidence against him was "overwhelming[]." McClary also offered no valid argument that he co-owned the mark with CEC. *Id*. at 1135 ("No reasonable juror could conclude that McClary retained any rights in the marks . . . ."). And we said that McClary's defense that he did not have notice of CEC's trademarks was refuted by "ample evidence." *Commodores III*, 822 F. App'x at 910.

Moreover, the district court found -- throughout the course of the decade of litigation -- that McClary's other positions, and overall litigation strategy, were "egregious," "unreasonable," and "untenable." Among other things, McClary tried to argue that there was a legal difference between "Commodore Entertainment

Corporation" and "Commodores Entertainment Corporation," but twice we deemed it "nonsensical." *Commodores II*, 879 F.3d at 1140–41 (citation modified); *Commodores I*, 648 F. App'x at 776. He also attempted to add a former band member, LaPread, without "address[ing] whether joinder of LaPread [was] feasible" and ignoring the fact that "disposing of this suit without LaPread [did] not impede his ability to later assert any claimed interest in the marks." *Commodores III*, 822 F. App'x at 912.[1]

The unreasonableness of McClary's litigation strategy is perhaps most blatant in his consistent disregard of the district court's orders, continuing to infringe on those marks by domestic uses in commerce. This misconduct began just two and a half months after the district court granted the preliminary injunction, when McClary violated the injunction by scheduling performances in the United Kingdom and Switzerland using the CEC marks -- conduct the district court described as "precipitous" and reflecting "contempt for the orders of the [c]ourt." In a later order, the district court found that McClary had again violated the injunction by calling their band the "Commodores Experience" and criticized one of McClary's arguments as "[n]ot even close." The district court also described one of McClary's defenses to a violation as "pure sophistry," directed that another repeated defense must "end[] now,"

---

[1] To the extent McClary claims he is being punished for filing numerous appeals, it was not the number of appeals, but the specious arguments he advanced in those appeals -- as evidenced in our decisions -- and elsewhere that rendered the case exceptional.

and "cautioned that [McClary] cannot avoid future responsibility by willful blindness."  To put it bluntly, as the district court did in its fee reinstatement order:  "McClary's conduct so flagrantly disregarded the law and th[e] [c]ourt's [o]rders that it verged on contempt of court."[2]

Even recently, despite the permanent injunction, "McClary's American agent continued to book performances and McClary engaged in at least one performance on U.S. soil." McClary claims, however, that because the district court had to modify the injunction based on *Abitron,* his conduct was somehow less unreasonable.  We disagree.  While the district court did make a "slight" modification to the permanent injunction to exclude purely extra-territorial conduct -- even McClary admits in his brief that the injunction was "essentially unchanged" -- the court expressly found that McClary's infringing conduct was not purely extra-territorial, and that even his foreign performances involved

---

[2] The fact that the court never found McClary in contempt in no way undermines its finding that his repeated violations added to the case's exceptional qualities.  *See Octane Fitness*, 572 U.S. at 555 ("[S]anctionable conduct is not the appropriate benchmark" for a court use in deciding whether a case is exceptional, but rather, how unreasonable the conduct is.).  Nor is there any merit to McClary's claim that the district court -- many years ago -- said this case was unexceptional.  McClary points to the court's statement from a 2018 pretrial conference that "the chances of [the court] finding this as an exceptional case are slim."  But litigation in the case continued for years after that statement was made, and the district court even noted at that time that it "would be open to be persuaded that [it's] wrong about" whether the case was exceptional. McClary has not convinced us that this long-ago comment barred the district court from changing its mind so many years, and docket entries, later.

significant use of the CEC marks in commerce within the United States.  In particular, it found that McClary's "most egregious positions" -- asserting that his infringing use of the CEC marks was "fair use" and repeatedly arguing that a typographical error in the trademark registration rendered it invalid -- had nothing to do with the extra-territorial reach of its permanent injunction.  As the district court succinctly put it: "*Abitron* did not make the decade of judicial labor necessitated by McClary's misconduct simply disappear."

All told, the district court reasonably concluded that McClary's legal arguments were weak, his strategy was vexatious, and his behavior contradicted court orders.  It acted well within its discretion in finding this was an exceptional case and in awarding CEC attorneys' fees under § 1117(a).  *Tobinick*, 884 F.3d at 1119.

**AFFIRMED.**